IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-03040-REB-MEH

LEONID SHIFRIN a/k/a LEO SHIFRIN,

      Plaintiff,

v.

STATE OF COLORADO, DEPARTMENT OF REAL ESTATE,
ERIN TOLL,
MARCIA WATERS,
PAUL MARTINEZ,
CARY WHITAKER,

      Defendants.

---

**RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS OR ABSTAIN, OR
FOR SUMMARY JUDGMENT**

---

Pending before the Court is Defendants' Motion to Dismiss or Abstain, or for Summary

Judgment [filed February 24, 2010; docket #8]. In accordance with 28 U.S.C. § 636(b)(1)(B) and

D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation. The motion is

fully briefed, and oral argument would not materially assist the Court in its adjudication. Based on

the record contained herein, the Court RECOMMENDS that Defendants' motion be granted in part

and denied in part, and that Plaintiff's claims against Defendants be dismissed.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this
case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify
those findings or recommendations to which the objections are being made. The District Court
need not consider frivolous, conclusive or general objections. A party's failure to file such
written objections to proposed findings and recommendations contained in this report may bar
the party from a de novo determination by the District Judge of the proposed findings and
recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. §
636(b)(1). Additionally, the failure to file written objections to the proposed findings and

## BACKGROUND

On December 31, 2009, Plaintiff, proceeding *pro se*, initiated this action by filing a "Complaint Pursuant to 42 U.S.C. § 1983 et seq." (Docket #1.) Plaintiff seeks declaratory and monetary relief for violation of his Constitutional rights. (*Id.* at 7.) Plaintiff's claims arise from the Colorado Division of Real Estate's decision to deny him a mortgage broker license. (*Id.*)

## I.    Facts

The following are factual allegations made by the Plaintiff in his Complaint and offered by Defendants for jurisdictional analysis. These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001), and for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

Beginning in 2007, any person in the state of Colorado who wished to broker a mortgage was required to register with the Director of the Colorado Division of Real Estate ("DRE"). *See* Colo. Rev. Stat. § 12-61-903 (2007) (current version § 12-61-901, *et seq.* (2010)). Such a requirement was not in effect prior to 2007. *Id.* In 2007, Plaintiff was issued a good faith temporary license that was valid until January 1, 2008. (Docket #1 at 2; docket #8 at 4.)

On August 22, 2007, Plaintiff applied for a permanent mortgage broker registration. (Docket #1 at 2.) In a letter dated November 26, 2007, Paul Martinez, on behalf of the DRE, notified Plaintiff that Colo. Rev. Stat. § 12-61-905(1)(b) may affect his eligibility for a mortgage broker

---

recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

registration. (Docket #8-4 at 9; docket #1 at 3.) At the time of the letter, Colo. Rev. Stat. § 12-61-905(1)(b) read: "[t]he Director shall deny, refuse to renew, or revoke the registration of an applicant who has [w]ithin the last five years, been convicted of or plead guilty or nolo contendere to a crime involving fraud, deceit, material misrepresentation, theft or breach of a fiduciary duty." Colo. Rev. Stat. § 12-61-905(1)(b) (2007) (amended by § 12-61-901 et. seq. (2010)). The November 26 letter stated that §12-61-905(1)(b) may apply to Plaintiff due to "Burglary and Larceny charges that occurred in July of 1991 and January of 1992." (Docket #8-4 at 9.)

On or about December 7, 2007, Plaintiff's mortgage broker registration application was completed. (Docket #8-10 at 2; docket #1 at 3.) At that time, the Director of the DRE was required to "issue or deny a registration within twenty-one days" after receiving a completed application. Colo. Rev. Stat. 12-61-903(5) (2007). Twenty-one days from December 7, 2007 was Friday December 28, 2007.

On January 2, 2008, Martinez sent Plaintiff a letter notifying him that the Director of the DRE had denied his application for a mortgage broker license.[2] (Docket #8-4 at 10; docket #1 at 3.) The denial resulted from a guilty plea entered by Plaintiff on a burglary charge in 1993. (Docket #8-4 at 10.) The denial letter did not reference any statutory authority that would allow the DRE to deny Plaintiff a license for a fourteen-year-old conviction. (*See id.*)

Plaintiff appealed his license denial and the case was set to be heard before an Administrative Law Judge ("ALJ") to make findings of fact and an "Initial Decision." (Docket #8 at 3; docket #8-4 at 11.) The Colorado Office of Administrative Courts ("OAC") assigned Plaintiff's appeal case no.

---

[2] Effective January 1, 2008, the word "registration" was changed to "license" within the section. *See* Colo. Rev. Stat. § 12-61-903 (2007); § 12-61-903 (2008).

MBL 2008-0002.  (Docket #8 at 4; Docket #1 at 3.)  On April 9, 2008, the Director of the DRE filed a "Notice of Grounds for Denial" with the OAC.  (Docket #8-7.)  The Director claimed that Plaintiff "lacks the qualities necessary to practice as a mortgage broker pursuant to §12-61-905.5(1)(n) C.R.S."  (*Id.* at 3.)  Colo. Rev. Stat. §12-61-905.5(1)(n), which allows the Director to deny a mortgage broker license application for crimes older than five years, became effective January 1, 2008.  *See* Colo. Rev. Stat. §12-61-905.5 (2008).

On July 17, 2008, ALJ Matthew E. Norwood issued an Initial Decision holding that §12-61-905.5(1)(n) was not applicable to Plaintiff.  (Docket #8-8 at 1; docket #1 at 4.)  On February 11, 2009, the Director of the DRE agreed with the ALJ and subsequently issued a "Final Agency Order" stating that "[t]he statue cited by the Director as grounds for denial of the application, C.R.S. §12-61-905.5(1)(n) does not apply to [Plaintiff]."  (Docket #8-8 at 1.)  The Final Agency Order also articulated that "[t]he Director will reconsider the application for license in accordance with the statutory interpretation set forth in the Initial Decision."  (*Id.*)

In a letter also dated February 11, 2009, the Director of the DRE notified Plaintiff that his application had been reconsidered but would be denied pursuant to Colo. Rev. Stat. § 12-61-905(1)(f).  (Docket #8-9 at 1.)  The Director alleged that, on January 18, 2008, Plaintiff violated § 12-61-903(1)(a) by brokering a mortgage without being licensed by the DRE.  (*Id.*)  The Director also alleged that "[s]ufficient evidence exists to prove additional license law violations of §§ 12-61-905.5(1)(a), 12-61-911(1)(b), and 12-61-905(1)(f)."  (*Id.*)

Plaintiff appealed his second license denial, and the case was set to be heard before an ALJ to make findings of fact and an Initial Decision.  (Docket #8 at 5; docket #1 at 4.)  The Colorado OAC assigned Plaintiff's second appeal case no. MBL 2009-0008. (Docket #8 at 5; docket #1 at 4.)

Effective August 5, 2009, the statutes governing mortgage brokers changed to allow the Director of the DRE to deny a mortgage broker license application for certain crimes older than five years. *See* § 12-61-905(1)(h). Citing this new authority, Cary Whitaker, acting on behalf of the Director of the DRE, sent a letter dated August 20, 2009 to Plaintiff denying his license application due to his previous burglary conviction. (Docket #8-11 at 4; docket #1 at 5.) Plaintiff appealed this new denial and requested a hearing before an ALJ. (Docket #23-1 at 2.) This third administrative action was assigned case no. MBL 2010-0001. (*Id.*)

On September 16, 2009, ALJ Norwood entered an "Order Granting Motion for Summary Judgment and Initial Decision" in favor of Plaintiff in case no. MBL 2009-0008. (Docket #1 at 13.) Specifically, ALJ Norwood concluded that:

> On December 28, 2007 the Director failed to issue or deny the Applicant's August 2007 application within 21 days, in contravention of Section 12-61-903(5) (now (7)). After having issued her denial five days late, the ALJ determined, and the Director agreed, that the basis given for the late denial was not applicable to [Plaintiff]. By this time the Director was well past the 21-day deadline. December 28, 2007 to February 11, 2009 is 411 days. At this point the Director was required by Section 12-61-903(7) and the APA to issue the license, not to commence a new license denial action. The ALJ grants the Motion and orders [Plaintiff's] application approved and a license issued.

(*Id.*)

On January 28, 2010, the Director of the DRE filed another Final Agency Order disagreeing with portions of the September 16, 2009 Initial Decision rendered by ALJ Norwood in case no. MBL 2009-0008. (Docket #8-10; docket #14 at 7.) The Director alleged that ALJ Norwood erred in determining summary judgment for Plaintiff was appropriate, and that an ALJ lacked the authority to order the issuance of a license. (Docket #8-10 at 3-4.) The DRE Director then remanded the matter to an ALJ for reconsideration. (*Id* at 5.)

On February 24, 2010, the Director of the DRE filed an unopposed Motion to Consolidate case nos. MBL2008-0002, MBL 2009-0008, and MBL 2010-0001 (Plaintiff's remaining Colorado OAC cases). (Docket #8-12.) The motion requested that a hearing be set for October 4-6, 2010 to hear Plaintiff's remaining administrative claims. (*Id.* at 2.)

On April 7, 2010, ALJ Norwood issued an "Order Granting Motion to Dismiss and Procedural Order." (Docket #23-1.) ALJ Norwood discussed the status of Plaintiff's pending claims, noting that:

> In truth case nos. MBL20080002, MBL 20090008, and MBL 20100001 are all really the same case dealing with the same August 2007 application. There was not finality to case no. MBL 20080002 because of the "reconsideration" that turned it into case no. MBL 20090008. Although an Initial Decision was issued in case no. MBL 20090008, it has now been remanded. When the Director issued her third denial in August 2009 based on the new Section 12-61-905(1)(h), this became MBL 20100001. It may have been less confusing if the Director had moved to amend case no. MBL 20090008 while it was pending before the ALJ to allege a violation of the new Section 12-61-905(1)(h). Nevertheless, the August 20, 2009 denial was a denial of a pending application: the [Plaintiff's] original 2007 application.

(*Id.* at 4.) The ALJ also granted Plaintiff's Motion to Dismiss in case no. 2010-0001 because the Director did not overcome the presumption that Colo. Rev. Stat. § 12-61-905(1)(h) should only be applied prospectively, not retroactively. (*Id.* at 4.) Finally, the ALJ noted that case no. 2009-0008 is still pending, which has a hearing set for October 4, 2010. (*Id.* at 5.)

## II.     Procedural History

In addition to money damages, Plaintiff seeks a declaratory judgment finding that the "use of a civil statute, the Colorado Mortgage Broker Act, to deny a qualified person under said Act to work as a mortgage broker and causing a [sic] unreasonable delay in granting him a mortgage broker license is unconstitutional and violates the rights of Plaintiff under the Constitution of the United States. " (Docket #1 at 7.) Plaintiff clarifies in the briefing, however, that he "is **not** alleging that

any version of the Colorado Mortgage Brokers Act or the Mortgage Broker Registration Act [] is unconstitutional." (Docket #14 at 2 (emphasis in original).) Rather, Plaintiff alleges that Defendants violated his constitutional rights by the method in which the DRE applied the law, and by their subsequent "misuse of the administrative process." (*Id.*) Based upon this premise, the Plaintiff brings statutory claims pursuant to 42 U.S.C. § 1985 and § 1986 involving conspiracy, and constitutional claims pursuant to 42 U.S.C. § 1983 arising under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*See* docket #1 at 6.) Plaintiff brings these claims against the DRE, DRE Director Erin Toll, Marcia Waters, Paul Martinez, and Cary Whitaker "all in their official and individual capacities." (Docket #1 at 1.)

On February 24, 2010, Defendants filed the within "Motion to Dismiss or Abstain, or For Summary Judgment." (Docket #8.) Defendants have filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), asserting that: (1) the Court should abstain from hearing Plaintiff's claims under the *Younger* abstention doctrine; (2) Plaintiff's complaint fails to state a claim upon which relief may be granted; (3) Defendants are entitled to qualified immunity; (4) Plaintiff's claims for damages against the DRE and other Defendants acting in their official capacities are barred by the Eleventh Amendment; (5) Plaintiff's claims for damages against the DRE and other Defendants acting in their official capacities are barred because none of the Defendants are "persons" for purposes of 42 U.S.C. §§ 1983, 1985, 1986; (6) Plaintiff fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1985(3); (7) Plaintiff's claim pursuant to 42 U.S.C. § 1986 must be dismissed because his § 1985 claim is insufficient; (8) Plaintiff fails to allege personal participation by Defendants Waters, Martinez, and Whitaker; and (9) Defendants are entitled to

quasi-judicial immunity.[3]  (Docket #8 at 6-20; docket #23 at 4-9.)

On March 17, 2010, Plaintiff filed a response to Defendants' Motion to Dismiss.  (Docket #14.)  Plaintiff rebuts Defendants' motion, arguing that: (1) *Younger* abstention would be inappropriate; (2) the complaint adequately states a claim upon which relief may be granted; (3) the suit against Defendants is not barred in either their individual or official capacities; and (4) none of the Defendants are protected by qualified immunity.  (*Id.* at 8-19.)

Defendants filed their reply in support of their Motion to Dismiss on April 12, 2010.  (Docket #23.)  In this reply, Defendants raised the issues of personal participation and quasi-judicial immunity for the first time.  (*Id.* at 4-9.)  Plaintiff sought and was granted leave to file a sur-reply, which was filed on April 19, 2010.  (Docket #24-1.)  In his sur-reply, Plaintiff references the April 7, 2010 order from ALJ Norwood, but he does not address the newly raised defenses.  (*Id.*)

## LEGAL STANDARD

### I.    Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

---

[3] The Court originally notified the parties that it intended to treat Defendants' "Motion to Dismiss or Abstain, or for Summary Judgment" as a motion for summary judgment because the motion attaches documents outside the pleadings.  (Docket #27.)  However, in a motion seeking reconsideration, Defendants argued that they wished to have their motion treated as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) because it was unnecessary to convert the pleading into a Rule 56 motion.  (*See* docket #34.)  The Court agreed and granted Defendants' motion to reconsider.  Accordingly, the "Motion to Dismiss or Abstain, or for Summary Judgment" will be treated as a motion to dismiss.  (*See* July 22, 2010 "Order on Motion to Reconsider Notice of Treatment Pursuant to Fed. R. Civ. P. 12(d)").

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## II. Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court must consider

the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

### III.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

**I.      Rule 12(b)(1) Defenses**

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

**A.      *Younger* Abstention Doctrine**

Defendants assert that this Court should abstain from hearing Plaintiff's claims under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). (Docket #8 at 6.) *"Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings— when such relief could adequately be sought before the state court." *Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). *Younger* abstention requires that "[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Id.* (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

When determining whether abstention is proper under the *Younger* framework, a court must "be sensitive to the competing tension between protecting federal jurisdiction and honoring principles of Our Federalism and comity." *Taylor*, 126 F.3d at 1296. This Court must also "keep

in mind that abstention 'is the exception, not the rule,' and hence should be 'rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). However, "*Younger* abstention is 'non-discretionary ... absent extraordinary circumstances,' if the three conditions are indeed satisfied."[4] *Id.* (quoting *Amanatullah*, 187 F. 3d at 1163).

The first prong of the *Younger* doctrine, determining whether there is an ongoing proceeding, actually "involves two sub-parts." *Id.* First, a court must determine whether there is an ongoing proceeding, and second, whether the ongoing proceeding is the type of proceeding that requires abstention under *Younger. Id.* For the purposes of *Younger* abstention, there are two types of ongoing proceedings: remedial and coercive. *Id.* at 889. For *Younger* abstention to apply, an ongoing proceeding must be coercive. *Id.* at 888-89. An ongoing proceeding that is merely remedial does not require this Court to abstain pursuant to *Younger. Id.*

When determining whether an ongoing proceeding is remedial or coercive, a court should first decide "whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory (a coercive proceeding)." *Id.* at 889. Second, a court "must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other

---

[4] "Extraordinary circumstances" includes situations "where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action," or "where the state law or regulation to be applied 'is flagrantly and patently violative of express constitutional prohibitions.'" *Brown*, 555 F. 3d at 888 n.4 (quoting *Trainor v. Hernandez*, 431 U.S. 434, 442 n. 7 (1977)) (citations and quotations omitted).

state-inflicted wrong (remedial)." *Id.* Finally, "if the federal plaintiff has committed an alleged bad act, then the state proceeding initiated to punish the plaintiff is coercive." *Id.* at 891.

Here, there is an ongoing state administrative proceeding. (*See* docket #23-1.) However, the administrative proceeding at issue is more aptly classified as "remedial" rather than "coercive" pursuant to the three factors identified in *Brown*.

Under the first factor in *Brown*, the Plaintiff, not the state of Colorado, initiated the proceeding by requesting a hearing after being denied a mortgage broker license. (*See* docket #8-4 at 11.) Because Plaintiff initiated the proceeding, his appearance was not mandatory. Thus, in seeking to overturn what he saw as an improper denial of his mortgage broker license, Plaintiff "initiated the state proceeding of [his] own volition to right a wrong inflicted by the state." *Brown*, 555 F. 3d at 889. Accordingly, the first factor is met demonstrating that the ongoing proceeding is remedial.

Likewise, the second factor in *Brown* is met here. Under this second factor, a court "must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial)." *Id.* Here, the Plaintiff does not contend that the administrative proceeding itself is unlawful. Instead, Plaintiff seeks a remedy for a state inflicted wrong, namely, "monetary damages due to a violation of his due process rights by the Defendants." (Docket #14 at 8.) Thus, the second factor in *Brown* indicates that the ongoing state administrative proceeding is remedial.

Finally, the third remedial/coercive factor in *Brown* is satisfied. An ongoing proceeding is coercive under this factor if "the federal plaintiff sought to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act." *Brown*, 555 F. 3d at 891. This administrative

proceeding was not initiated by the state to punish Plaintiff for an alleged bad act; instead, it was initiated by Plaintiff in an attempt to correct an alleged unlawful act by the state. Accordingly, application of the three remedial/coercive factors in *Brown* demonstrate that the ongoing administrative proceeding is remedial rather than coercive.

"In the § 1983 context, it is especially useful to remember why the federal courts' duty to exercise their jurisdiction is so imperative: Congress specifically created a federal cause of action enforceable in federal courts." *Id.* at 894. The ongoing state proceeding underlying this case is remedial rather than coercive and is not entitled to deference under the *Younger* abstention doctrine.[5] *Id.* at 888-91. Accordingly, it would be improper for this Court to abstain pursuant to the *Younger* abstention doctrine, and the Court recommends Defendants' motion be denied in this regard.

B.      Sovereign Immunity

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of*

---

[5] Because this type of proceeding is not entitled to *Younger* deference, the Court does not reach the second or third requirements for *Younger* abstention.

*Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges in his Complaint that he seeks both monetary damages and a declaration that the Defendant's "use" of the subject Colorado statutes is unconstitutional. *See* docket #1 at 7.[6] Plaintiff has clarified in his response to the present motion that he "is not alleging that any version of the Colorado Mortgage Brokers Act or the Mortgage Broker Registration Act [] is unconstitutional" [docket #14 at 2] but, in essence, he seeks a declaration that state officers (Defendants) have violated his federal rights in the past, which is not permitted pursuant to *Younger*.[7] Consequently, the Court finds that any claims brought against the DRE and the

---

[6]Notably, the Plaintiff does not seek prospective injunctive relief, such as an order for the issuance of a mortgage broker's license in Colorado. *See, e.g., Buchwald*, 159 F.3d at 496 (where plaintiff alleged continued exclusion from medical school violated her constitutional rights, she stated a proper claim against defendants in their official capacities seeking a prospective injunction ordering her admission to the medical school).

[7]Plaintiff requests "[a] declaratory judgment finding that the use of a civil statute, the Colorado Mortgage Broker Act, to deny a qualified person under said Act to work as a mortgage broker and causing a [sic] unreasonable delay in granting him a mortgage brokers license is unconstitutional and violates the rights of Plaintiff under the Constitution [of] the United States." Docket #1 at 7.

Defendants in their official capacities are barred by the Eleventh Amendment. The Court recommends that the District Court grant Defendants' motion in this regard and dismiss Plaintiff's claims against the DRE and the Defendants in their official capacities.

## II.    Rule 12(b)(6) Defenses

### A.    Quasi-Judicial Immunity[8]

It is well-settled that the doctrine of judicial immunity applies to actions brought pursuant to Section 1983. *Van Sickle v. Holloway*, 791 F.2d 1431, 1434-35 (10th Cir. 1986) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Under the doctrine of absolute quasi-judicial immunity, "[j]udges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000). "Moreover, '[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)). This judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved. *See id.* "Thus, absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Id.* (quoting *Eades v. Sterlinske,* 810 F.2d 723, 726 (7th Cir. 1987)).

Non-judicial officers or administrative officials may enjoy absolute immunity "if the following formula is satisfied: (a) the officials' functions must be similar to those involved in the

---

[8]Claims for damages against persons affiliated with the judicial system and sued in their individual capacities may be barred by the principles of judicial and quasi-judicial immunity and dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Pawlik v. Nix*, No. 95-5265, 1996 WL 560360, *6 (E.D. Pa. Sept. 30, 1996).

judicial process, (b) the officials' actions must be likely to result in damage lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz v. State Bd. of Med. Exam'rs,* 822 F.2d 1508, 1513 (10th Cir. 1987) (citing *Butz v. Economou,* 438 U.S. 478, 507 (1978)). However, federal executive officials exercising discretion are entitled to absolute immunity only in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Id.* The Supreme Court later expanded this doctrine and "held that absolute immunity from damages applies to federal hearing examiners and administrative law judges." *Id.* (citing *Cleavinger v. Saxner,* 474 U.S. 193, 202 (1985)).

The Tenth Circuit has applied the *Butz* rationale and extended quasi-judicial immunity to cases involving state administrative or executive officials serving in adjudicative, judicial, or prosecutorial capacities. *See Horwitz,* 822 F.2d at 1508 (extending quasi-judicial immunity to the Colorado Board of Medical Examiners); *Russ v. Uppah,* 972 F.2d 300, 303 (10th Cir. 1992) (extending quasi-judicial immunity to parole boards); *Atiya v. Salt Lake County,* 988 F.2d 1013, 1017 (10th Cir. 1993) (extending quasi-judicial immunity to county administrative review boards); *Saavedra v. City of Albuquerque,* 73 F.3d 1525, 1529 (10th Cir. 1996) (extending quasi-judicial immunity to municipal hearing officers).

When a court determines whether an official's conduct is quasi-judicial in nature and whether absolute immunity attaches, it must engage in a "functional analysis" of the conduct. *Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1317 (10th Cir. 2002). Six factors, among others, have been identified by the Tenth Circuit, following and applying *Cleavinger,* "as characteristic of the judicial process and to be considered in determining absolute as contrasted from qualified immunity." *Id.*

These factors are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedence; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.*

Here, Defendants contend that Defendant Toll, Director of the Department of Real Estate, is required by Colorado law to investigate, gather information and make decisions on the licensing and discipline of mortgage brokers. Docket #23 at 8. Toll is authorized to delegate investigative duties to division staff, including the remaining individual Defendants in this case. *Id.* Following an investigation and initial decision, the Director then considers any challenges or objections made by the broker and makes a final agency decision that is appealable to the Colorado Court of Appeals. *Id.* Based upon this information, Defendants argue that all individual Defendants are entitled to absolute quasi-judicial immunity.

The Court finds the argument bereft for two reasons. First, Defendants have provided insufficient information to conduct the functional analysis required by *Moore*. Second, Defendants raise the argument for the first time in their reply brief and, thus, the Court declines to address it here.[9] "When a party puts forth new arguments in a reply brief, a court may avoid error by either:

---

[9]The Court notes that Plaintiff sought and was granted leave to file a surreply regarding an ALJ decision that had been issued during the briefing on this motion. *See* docket #24. The surreply brief mentions nothing about the "quasi-judicial immunity" or "personal participation" arguments raised by Defendants for the first time in the reply brief.

(1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply." *E.E.O.C. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006)). Consequently, the Court recommends denying the Defendants' motion with regard to their quasi-judicial immunity defense.

B. <u>Qualified Immunity</u>

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording

courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for each claim alleged, the Court examines first whether the Plaintiff has demonstrated on the alleged facts that the Defendants violated his constitutional or statutory rights. If the Plaintiff has stated a constitutional violation, the Court will then proceed to determine whether the right was clearly established at the time of the alleged conduct.

### 1. *Claim Pursuant to 42 U.S.C. § 1985*

To succeed with a § 1985(3) claim, the Plaintiff must show (1) the existence of a conspiracy (2) intended to deny him equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971)); *see also Ward v. St. Anthony Hosp.,* 476 F.2d 671, 676 (10th Cir. 1973). The Tenth Circuit has clarified these elements over the years. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994). First, a valid claim must involve a conspiracy. Second, § 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (citing *Griffin*, 403 U.S. at 101-02); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) ("[a] violation of section 1985 must include class-based or racially discriminatory animus"). The language of this requirement has been narrowly construed and does not reach conspiracies motivated by an economic or commercial bias. *Id.* (citing *United Bhd. of Carpenters & Joiners of America,*

*Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 837 (1983)). Third, § 1985(3) covers conspiracies aimed at interfering with rights that are protected against both private and official conduct. *Id.*

Here, the Plaintiff makes no allegations of race or class-based animus; therefore, to the extent that he seeks relief pursuant to 42 U.S.C. § 1985(3), Plaintiff's claim must fail. The Court recommends finding the individual Defendants are entitled qualified immunity from suit regarding Plaintiff's § 1985 claim.

2.    *Claim Pursuant to 42 U.S.C. § 1986*

Section 1986 creates a cause of action against any person who, with knowledge of wrongs about to be committed under a § 1985 conspiracy, fails to prevent the commission of those acts. 42 U.S.C. § 1986. To maintain a § 1986 action, the Plaintiff must show that: (1) a Defendant had actual knowledge of a § 1985 conspiracy, (2) the Defendant had the power to prevent or aid in preventing the commission of a § 1985 conspiracy, (3) the Defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed. *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) (citing *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994)).

Here, based upon the Court's finding that Plaintiff has failed to allege a proper § 1985 conspiracy claim, the Court finds he has failed, in turn, to allege a § 1986 claim. Consequently, the Court recommends finding the individual Defendants are entitled to qualified immunity from suit regarding Plaintiff's § 1986 claim.

3.    *Claims Pursuant to 42 U.S.C. § 1983*[10]

a.    Personal Participation

Defendants Waters, Martinez and Whitaker contend that they did not personally participate in any incident giving rise to Plaintiff's claims and, therefore, must be dismissed from this action as a matter of law.  Docket #23 at 4.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997).  Supervisory status alone does not create § 1983 liability.  *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted).

Once again, the Defendants raise this argument for the first time in their reply brief and the Court declines to address it.  *See E.E.O.C. v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d at 1260.  The Court recommends that Defendants' motion be denied with respect to this defense.

b.    Equal Protection Claim

Plaintiff primarily alleges that the DRE misapplied the law when considering his application for a mortgage broker license.  (*See* docket #1.)  As part of his § 1983 claim, Plaintiff asserts that

---

[10]The Court notes that, although not alleged in his Complaint, the Plaintiff argues in his response brief that Defendants applied the Mortgage Broker Licensing Act retroactively in violation of the Colorado constitution.  Docket #14 at 12-13.  Even if alleged in the Complaint, however, "Section 1983 does not ... provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law."  *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988); *see also Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) ("a violation of state law alone does not give rise to a federal cause of action under § 1983").

the DRE misapplied the law in order to "deny [him] equal protection of laws." (*Id.* at 6.)

The Fourteenth Amendment requires that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "'Equal protection is essentially a direction that all persons similarly situated should be treated alike.'" *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006)). "[E]qual protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). In order to state a claim for violation of equal protection, a plaintiff "'must state exactly to which group' they believe they are similarly situated." *KT & G Corp. v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1136 (10th Cir. 2008) (quoting *Trujillo*, 465 F.3d at 1228)).

Here, Plaintiff does not provide a single example of another applicant who was similarly situated and was treated differently during the application process. Instead, Plaintiff reasserts his claim that the DRE failed to follow state law, and assumes that the DRE applied the law differently in all the other license applications. (Docket #14 at 14.) Plaintiff does not provide any examples of state law being applied differently to other applicants. Plaintiff's complaint merely "encompasses a broad range of imaginable circumstances" that may or may not entitle him to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1253 (10th Cir. 2008). Because Plaintiff makes only bare assertions in his Complaint that he was treated differently, Plaintiff's equal protection claim "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 546). Accordingly, this Court recommends finding that Plaintiff fails to state a plausible claim under the Equal Protection Clause.

　

c.      Due Process Claims

1.      Procedural Due Process

Plaintiff also alleges that, in denying his application for a mortgage broker license, the DRE has deprived "Plaintiff of his liberty without due process of law." (Docket #1 at 6.) Plaintiff's due process claims arise from the denial of his mortgage broker license application. (Docket #14 at 12; docket #8-10 at 2; docket #1 at 3.) In 2007, state law required that the Director of the DRE either issue or deny a mortgage broker license application within twenty-one days of completion. *See* Colo. Rev. Stat. § 12-61-903(5) (2007). Plaintiff claims that his license application was completed on December 7, 2007, and that he had a "right to have his Application reviewed on or before December 28, 2007." (Docket #14 at 12.)

"To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Stears v. Sheridan County Mem'l Hosp. Bd. of Trustees*, 491 F.3d 1160, 1162 (10th Cir. 2007). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quotations and citations omitted).

On January 2, 2008, Plaintiff's mortgage broker application was denied, and Plaintiff appealed his denial in OAC case no. MBL 2008-0002. (Docket #8 at 4; Docket #1 at 3.) On July 17, 2008, the ALJ issued an initial decision on case no. MBL 2008-0002, and on February 11, 2009, the Director of the DRE issued a "Final Agency Order" stating that "[t]he Director will reconsider the application for license in accordance with the statutory interpretation set forth in the Initial Decision." (Docket #8-8 at 1; docket #1 at 4; docket #8-8 at 1.) Plaintiff appealed the subsequent

reconsideration, and the Colorado OAC assigned Plaintiff's second appeal case no. MBL 2009-0008. (Docket #8 at 5; docket #1 at 4.) On September 16, 2009, ALJ Norwood reached an Initial Decision in case no. 2009-0008, and a Final Agency Order remanding the case for reconsideration with the ALJ was entered on January 28, 2010. (Docket #1 at 13; docket #8-10; docket #14.) On April 7, 2010, all of Plaintiff's remaining administrative actions were consolidated with case no. 2009-0008 and a hearing was set for October 4, 2010. (Docket #23-1.)

In asserting that his procedural due process rights have been violated, Plaintiff argues that he possesses a liberty interest in the statutory requirement that the DRE Director issue or deny a mortgage broker registration within twenty-one days after the Director receives a completed application and all required information. *See* Colo. Rev. Stat. § 12-61-903 (2007). Taking Plaintiff's allegations as true, he asserts that an order regarding the mortgage broker application he submitted on December 7, 2007 was due no later than December 28, 2007, but the order was issued on January 2, 2008, following the January 1 effective date of the amended statute allowing denial of the application.

A state law that generates a legitimate claim of entitlement can create a protected interest under the Due Process Clause. *Pierce v. Delta Cnty. Dep't of Social Servs.*, 119 F. Supp. 2d 1139, 1152 (D. Colo. 2000) (citing *Barry v. Barchi,* 443 U.S. 55, 64 & n. 11 (1979)). State-created procedures, however, do not create such an entitlement where none would otherwise exist. *Id.* (citing *Olim v. Wakinekona,* 461 U.S. 238, 250 & n.12 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.")). Rather, a constitutionally protected liberty interest arises where a state statute puts substantive limitations on official discretion and mandates a particular outcome under

25

specific criteria. *Id.* In contrast, where the state statute creates a mandatory procedure but does not guarantee a particular substantive outcome, no protected liberty interest exists. *Id.* (citing *Tony L. By and Through Simpson v. Childers,* 71 F.3d 1182, 1185 (6th Cir. 1995) and *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463 (1989)).

Here, the Plaintiff provides the following language of the statute presumably in effect in 2007 when he submitted his application for the broker license:

> The director shall issue or deny a registration within twenty-one days after receiving the completed criminal history record check, completed application, application fee, and proof of the posting of the surety bond. C.R.S. § 12-61-903 (effective through January 1, 2008).

Docket #14 at 12. The statute reflects both substantive limitations on official discretion (within twenty-one days) and a mandatory particular outcome (shall issue or deny a registration). Thus, the Court recommends finding that Plaintiff has alleged a protected liberty interest in receiving a decision on his mortgage broker application within 21 days of submitting it.

Even if the Plaintiff has sufficiently alleged a protected liberty interest, however, he fails to demonstrate that "no due process of law was afforded." As the record above indicates, Plaintiff has been given "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Plaintiff has had numerous opportunities to challenge his license denial, including an ongoing appeal in the Colorado OAC. Plaintiff also has the ability to seek judicial review of final agency action pursuant to Colo. Rev. Stat. §§ 24-4-104(9), 24-4-106. Because he has been afforded due process with regard to his license denial, Plaintiff fails to state an "actionable procedural due process claim." *Stears*, 491 F. 3d at 1162. Thus, the Court recommends finding that Plaintiff has failed to state a plausible procedural due process claim and that Defendants are entitled to qualified immunity.

## 2. Unreasonable Delay

Plaintiff also contends that his due process rights have been violated by "unreasonable delay." (Docket #1 at 7, docket #14 at 14-15.) Specifically, Plaintiff asserts "Defendants cannot in good faith argue that 3 years is a reasonable time to review a license application for a mortgage broker." (*Id.* at 15.) Plaintiff bases this argument on the fact that he originally submitted a completed license application in December 2007 and administrative proceedings surrounding the application are ongoing. (*See id.*)

The administrative proceedings altogether have been lengthy; however, Plaintiff overstates his case when he claims that the DRE has taken three years to "review his license application for a mortgage." (*Id.*) During the application process and the subsequent administrative hearings, the longest period of time between an appeal and an "Initial Decision," and an "Initial Decision" and a "Final Agency Order" was less than eight months. This is not an unconstitutionally lengthy delay. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("A 9-month adjudication is not, of course, unconstitutionally lengthy *per se*.") Accordingly, Plaintiff fails to state a claim upon which relief may be granted for an unconstitutionally unreasonable delay and the Court recommends finding that the individual Defendants are entitled to qualified immunity regarding this claim.

## III. Leave to Amend

Plaintiff contends that the Court should not dismiss his Complaint "where any errors by a pro se plaintiff may be remedied by amendment." (Docket #14 at 9-10).

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this

jurisdiction, the court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] to amend [her] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)).

The Court finds it is patently obvious that amendment would be futile with respect to Plaintiff's due process claims. *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."). Moreover, Plaintiff raises no arguments concerning either dismissal or amendment of his § 1985 and § 1986 claims; therefore, the Court assumes the Plaintiff has abandoned those claims. However, the Plaintiff contends that he "indeed can make a good faith claim that he was treated differently from other applicants" for purposes of his equal protection claim. Docket #14 at 14. Therefore, because it is possible Plaintiff may cure the pleading deficiencies for his equal protection claim against the individual Defendants, the Court recommends that Plaintiff be allowed to file an amended complaint, consistent with Fed. R. Civ. P. 8 and other federal and local rules, within thirty (30) days of the District Court's Order.

## CONCLUSION

In the current Complaint, the Plaintiff fails to state claims against Defendants, both in their official and individual capacities, upon which relief may be granted. Accordingly, the Court RECOMMENDS that the District Court **grant in part and deny in part** Defendants' Motion to Dismiss or Abstain, or for Summary Judgment [filed February 24, 2010; docket #8] as set forth

herein, dismiss Plaintiff's claims against Defendants in their official capacities, dismiss Plaintiff's due process, § 1985, and § 1986 claims against the individual Defendants, and grant the Plaintiff leave to file an amended complaint articulating an equal protection claim against the individual Defendants consistent with federal and local rules.

Respectfully submitted at Denver, Colorado, this 11th day of August, 2010.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge