IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-03040-REB-MEH

LEONID SHIFRIN a/k/a LEO SHIFRIN,

      Plaintiff,

v.

ERIN TOLL,
MARCIA WATERS,
PAUL MARTINEZ,
CARY WHITAKER,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are Plaintiff's Motion for Leave to File Second Amended Complaint [filed April 11, 2011; docket #76] and Defendants' Amended Motion to Dismiss First Amended Complaint [filed December 2, 2010; docket #65]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, these matters have been referred to this Court for disposition. The matters are fully briefed, and oral argument would not assist the Court in its consideration of these matters. For the reasons stated below and considering the entire record herein, the Court RECOMMENDS Plaintiff's Motion for Leave be **DENIED** and Defendants' Amended Motion to Dismiss be **GRANTED**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

## BACKGROUND

### I.     Procedural History

On December 31, 2009, Plaintiff, proceeding *pro se*, initiated this action by filing a "Complaint Pursuant to 42 U.S.C. § 1983 et seq." (Docket #1.)  Plaintiff sought declaratory and monetary relief by bringing statutory claims pursuant to 42 U.S.C. § 1985 and § 1986 involving conspiracy, and constitutional claims pursuant to 42 U.S.C. § 1983 arising under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*Id*. at 6.)  Plaintiff's claims arise from the Colorado Division of Real Estate's decision to deny him a mortgage broker license.

On February 24, 2010, Defendants filed a "Motion to Dismiss or Abstain, or For Summary Judgment." (Docket #8.) On March 17, 2010, Plaintiff filed a response to Defendants' Motion to Dismiss, and Defendants filed their reply in support of their Motion to Dismiss on April 12, 2010. (Dockets #14, #23.)  Plaintiff sought and was granted leave to file a sur-reply, which was filed on April 19, 2010. (Docket #24.) This Court recommended that Plaintiff's complaint be dismissed and that the Plaintiff be granted leave to amend his allegations concerning his equal protection claim. (Docket #43.)   In adopting the Recommendation on September 27, 2010, Judge Blackburn dismissed all claims, but granted the Plaintiff leave to file an amended complaint articulating an equal protection claim against the individual Defendants. (*See* docket #44.)

On October 20, 2010, Plaintiff filed a "First Amended Complaint Pursuant to 42 U.S.C. §

---

recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

1983 et seq." seeking only monetary relief for a constitutional claim arising under the Equal Protection Clause of the Fourteenth Amendment against the Defendants in their individual capacities. (Docket #45.) On November 29, 2010, Defendants filed a Motion to Dismiss the Amended Complaint. (Docket #62.)  This motion was denied without prejudice due to an excessive number of pages (Docket #64); thus, Defendants filed the present Amended Motion to Dismiss on December 2, 2010. (Docket #65.)  Defendants argue that (1) Plaintiff has not stated an equal protection claim, particularly a class-of-one claim; (2) Defendants are entitled to qualified immunity; (3) Defendants Waters, Martinez, and Whitaker did not personally participate in the denial of Plaintiff's mortgage broker license; and (4) Defendants are protected by quasi-judicial immunity.

On December 23, 2010, Plaintiff filed a response to Defendant's Motion to Dismiss, claiming that (1) he has properly pled a general equal protection claim and is not proceeding on a class-of-one theory; (2) Defendants are not entitled to qualified immunity because they denied him equal protection and should have known that such conduct was unlawful; (3) Defendants Waters, Martinez, and Whitaker personally participated in denying Plaintiff equal protection under the laws; and (4) Defendants are not protected by quasi-judicial immunity because they have failed to present evidence to support evaluation of this immunity under the applicable test.  (Docket #71.)

Defendants then filed a reply in support of the Motion to Dismiss on January 6, 2011, repeating their original arguments and contending that (1) Plaintiff has failed to sufficiently provide examples of similarly situated individuals; (2) Plaintiff failed to allege any facts that would support a finding of subjective ill-will or malice, which is arguably required to state a class-of-one equal protection claim in this case; (3) Plaintiff does not contest the rational basis of denying a mortgage

license to someone with a burglary conviction; and (4) Plaintiff, by the form of his allegations, admits that he is proceeding on a class-of-one equal protection theory.  (Docket #72.)

While the amended motion to dismiss was still pending before the Court, on April 11, 2011, Plaintiff filed a "Motion for Leave to Second Amend Complaint." (Docket #76.)  Plaintiff seeks to plead the factual basis in greater detail by explaining how malice is present in this case and by including the name of a third similarly situated individual.  Defendants filed a Joint Response to Plaintiff's Motion to Amend on May, 3, 2011, arguing that Plaintiff's amendment is unduly delayed because it comes several months after the motion to dismiss was filed, and that Plaintiff's amendment is futile because he has not stated a motive for the alleged malice and cannot meet the rational basis test.  (Docket #78.)  Although provided the opportunity to do so, Plaintiff did not file a reply brief.

## II.    Statement of Facts

The original factual background of this case is detailed in the Court's Recommendation on Defendants Motion to Dismiss or Abstain, or For Summary Judgment, docket #43.  The factual allegations set forth in the operative First Amended Complaint are not substantially different than those set forth in the original complaint, except as described herein.  *See* First Amended Complaint, docket #45.  These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

To summarize, a decision on Plaintiff's application for a mortgage broker license was originally due on December 28, 2007, twenty-one days after his application was complete.  (Docket #45 at 3.)  Had a determination on his application been reached at that time, under existing law, Plaintiff would have had no relevant criminal convictions that might prevent the granting of such

a license. (*Id.*) However, a determination on his application was not reached until January 2, 2008, at which point the law concerning mortgage broker licenses had been revised. (*Id.*) Under the new version of the law, a license could be denied or revoked for any relevant criminal conviction, including burglary, regardless of how old the conviction was. (*Id.*) Plaintiff was denied a license based upon a 1991 conviction for burglary. (*Id.*) Plaintiff alleges that Mark Shifrin, Oai Luong, and others received different treatment, because the director issued their licenses within twenty-one days of completion of their applications. (*Id.* at 7.)

Plaintiff appealed his denial, and on July 17, 2008, ALJ Matthew E. Norwood issued an Initial Decision holding that the new law was not applicable to Plaintiff. (*Id.* at 4.) On February 11, 2009, the Director of the Department of Real Estate (DRE) agreed with the ALJ and issued a "Final Agency Order" stating that "[t]he Director will reconsider the application for license in accordance with the statutory interpretation set forth in the Initial Decision." (*Id.*)

In a letter also dated February 11, 2009, the Director of the DRE notified Plaintiff that his application had been reconsidered but would be denied because he had brokered a mortgage without being licensed. (*Id.*) Plaintiff alleges that Defendant Martinez fabricated evidence without which this denial of his license may not have occurred. (Docket #45 at 6.) In particular, Plaintiff alleges that Martinez fabricated the interviews that formed the basis of the February 11, 2009, denial of his license. (*Id.* at 4, 6.) Furthermore, Plaintiff alleges that Defendants Toll and Whitaker were at all relevant times the supervisors of Martinez and that they sanctioned the above mentioned actions by Martinez. (*Id.* at 7.) Plaintiff also alleges that Defendants Toll, Waters and Whitaker worked to deny his license by not complying with the order of the ALJ. (*Id.*)

Plaintiff then appealed his second license denial. With regard to this denial, on September

16, 2009, ALJ Norwood issued an Initial Decision holding that "the Director was required . . . to issue the license not to commence a new license denial action" and ordered a license issued. (*Id.* at 6.)  On January 28, 2010 the Director of the DRE filed another Final Agency Order disagreeing in part with this Initial Decision and remanding the matter to an ALJ for reconsideration.  (Docket #8 at 5; Docket #65-12.)

On remand, all cases regarding Plaintiff's two separate license denials were consolidated and a hearing was set for October 4, 2010.  (Docket #23-1 at 5; Docket #65-13 at 5.)  The only new fact that was not included in the Statement of Facts set forth in this Court's first Recommendation, is that on September 13, 2010, prior to the scheduled OAC hearing, the new acting DRE Director granted Plaintiff's application for a license. (*See* Docket #45 at 6; Docket #65 at 7.)

## MOTION TO AMEND

Because it is possible that Plaintiff's request to amend the operative First Amended Complaint would render Defendants' motion to dismiss moot, the Court will first address Plaintiff's motion to amend.

## I.      Proposed Amendments

Through the proposed Second Amended Complaint, Plaintiff seeks to "plead the factual basis in greater detail." (Docket #76 at 2.)  In particular, Plaintiff seeks to allege that the Defendants acted with malice and to add the name of one additional similarly situated individual, Hung Luong. (*Id.* at 9-10).

## II.     Briefing on the Motion

Plaintiff notes that he has prosecuted this case diligently and believes that there have been no failures to cure any alleged deficiencies. (*Id.* at 3.) Additionally, Plaintiff contends that because

the filing of an amended complaint will not require the Defendants to re-file an answer and will not affect any scheduling or discovery, which have not yet occurred in this case, he should be allowed to amend his complaint. (*Id*. at 3.)

Defendants contend that Plaintiff's request for amendment is futile and unduly delayed. Defendants argue that the proposed amendments are futile because Plaintiff does not identify facts supporting a motive for malice and that, even if the allegation of "maliciousness" is sufficient on its own, Plaintiff cannot meet the rational basis test. (Docket #78 at 5). Additionally, Defendants argue that the proposed amendments are unduly delayed because Plaintiff "has given no reason that he was unable to accurately plead his equal protection claim in this First Amended Complaint," nor has he given a reason for the several months' delay since the motion to dismiss this complaint was filed. (*Id*. at 6.)   Furthermore, they argue that the facts are unchanged. (*Id*. at 7.)

## III.   Discussion

Rule 15 of the Federal Rules of Civil Procedure provides that, following a twenty-one day period for service of the complaint or service of a responsive pleading or Rule 12 motion, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a) (2010).  Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave when justice so requires." *Id.*  Nevertheless, denying leave to amend is proper if the proposed amendments are unduly delayed, unduly prejudicial, futile, or sought in bad faith.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

### A.   Futility of Plaintiff's Proposed Amendments

Amendments adding factual allegations that do not affect the analyses of parties' pending dispositive motions are futile.  *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350,

7

1374 (D. Colo. 1996).  Here, Plaintiff's amendments concern his claim for violation of the Equal Protection Clause of the Fourteenth Amendment.  The Supreme Court has recognized "successful equal protection claims brought by a 'class of one.'" *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff disputes that he brings an equal protection claim under a class-of-one theory. (Docket #71 at 3.)  However, he does not claim to proceed as a member of a protected class or on behalf of an entire class, such as race, to support a traditional equal protection claim.  Rather, Plaintiff claims that he was treated differently than other members of his "group," or, applicants that did not have convictions within the past 5 years.  (*Id.*)  This is a quintessential class-of-one equal protection claim.  *See Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006).

An equal protection claim in such a "class-of-one" case requires a showing that "(1) [the party] has been intentionally treated differently than other similarly situated individuals, *see* [*Olech*, 528 U.S. at 564], and (2) the difference in treatment was objectively irrational and abusive, *see* [*Jicarilla,* 440 F.3d at 1211]." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x. 887, 895-96 (10th Cir. 2010).  To determine the futility of the proposed amendments here, the Court first looks at the addition of "malice" as an element of an equal protection claim, then at the identification of a third similarly situated individual.  The Court finds that neither the addition of "malice" nor the simple naming of a third similarly situated individual affect the analysis of the pending motion to dismiss, and thus, amendment is futile.  *See Beal Corp. Liquidating Trust*, 927 F. Supp. at 1374.

1.     *Malice*

For class-of-one cases, Justice Breyer's concurrence in *Olech* did recommend the inclusion of an extra factor of "ill-will."  *See Jicarilla,* 440 F.3d at 1210.  However, the majority in *Olech* did

8

not require "subjective ill-will," or "malice," but left it open to the circuits to give meaning to the phrase "irrational and wholly arbitrary." *Id.* The Tenth Circuit has done this by requiring that a class-of-one plaintiff must show that action taken by a government official was intentional and not only irrational, but also abusive. *Id.* at 1211. Thus, "malice" standing alone is not an element necessary to state a class-of-one equal protection claim in the Tenth Circuit.

Here, Plaintiff seeks to modify previous factual allegations in his First Amended Complaint by stating that the actions taken by Defendants were done with malice. (Docket #76-1 at 5, 9-10). However, he does not describe these actions by providing additional factual detail which may support a finding of irrational and abusive action under the Tenth Circuit's test for class-of-one claims. The additional statements that accompany Plaintiff's use of "malice," when there are any additional statements, are conclusory in nature. Thus, the simple additions of the word "malice" in its various forms to the complaint would be futile.

### 2. *Additional Similarly Situated Individual*

For the same reasons set forth in this Recommendation on Defendant's Amended Motion to Dismiss First Amended Complaint (*see infra* at 19-20), the addition of Hung Luong as another name to the list of similarly situated individuals set forth in Plaintiff's operative First Amended Complaint would be futile.

### B. Undue Delay of Plaintiff's Proposed Amendments

In the Tenth Circuit, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Duncan v. Manager, Dep't of Safety,* 397 F.3d 1300, 1315 (10th Cir. 2005); *Hayes v. Whitman,* 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether a plaintiff has delayed, but whether such delay is undue. *Minter v. Prime Equip. Co.*, 451 F.3d 1196,

1206 (10th Cir. 2006).   Delay is undue "when the party filing the motion has no adequate explanation for the delay." *Frank*, 3 F.3d at 1365-66.

Denial of an amendment is also appropriate when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)); *see also Durham v. Xerox Corp.,* 18 F.3d 836, 840 (10th Cir. 1994) ("[t]he unexplained delay alone justifies the district court's discretionary decision."); *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect.  For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.") (citations omitted).

Plaintiff seeks to "plead the factual basis in greater detail."  (Docket #76 at 2.)  As stated above, Plaintiff seeks to allege that the Defendants acted with malice and to add the name of one additional similarly situated individual, Hung Luong.  (*Id*. at 9-10.)  However, Plaintiff fails to explain in any manner that he did not know, nor should not have known, these facts at the time he filed his First Amended Complaint.  Furthermore, Plaintiff does not state that he learned these new facts during discovery or at any time during the course of the litigation.  *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 688 (D. Colo. 2000).  Indeed, the allegation of malice seems to rely on no additional facts, but rather on a re-interpretation of the facts already within the First Amended Complaint.  In light of this, Plaintiff also fails to give adequate reason for a delay of four months since the filing of Defendant's Motion to Dismiss and approximately three months from

the time that Defendants filed their reply in support of the Motion to Dismiss.

Therefore, based on the futility of the amendments and having no adequate explanation for the delay, the Court recommends that the District Court deny Plaintiff's Motion to Amend to add additional factual allegations to the First Amended Complaint.

## DEFENDANTS' AMENDED MOTION TO DISMISS FIRST AMENDED COMPLAINT

### I.     Legal Standards

#### A.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

#### B.     Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

11

and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.  Analysis

In their motion, Defendants argue that (1) Defendants are protected by quasi-judicial immunity, (2) Defendants are entitled to qualified immunity, (3) Plaintiff has failed to state an equal protection claim, particularly a class-of-one claim, and (4) Defendants Waters, Martinez, and Whitaker did not personally participate in the denial of Plaintiff's mortgage broker license.  The Court will address each defense in turn.

### A.    Quasi-Judicial Immunity[2]

It is well-settled that the doctrine of judicial immunity applies to actions brought pursuant to Section 1983. *Van Sickle v. Holloway*, 791 F.2d 1431, 1434-35 (10th Cir. 1986) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Under the doctrine of absolute judicial immunity, "[j]udges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all

---

[2]Claims for damages against persons affiliated with the judicial system and sued in their individual capacities may be barred by the principles of judicial and quasi-judicial immunity and dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Pawlik v. Nix*, No. 95-5265, 1996 WL 560360, *6 (E.D. Pa. Sept. 30, 1996).

jurisdiction." *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000). "Moreover, '[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)). This judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved. *See id.* "Thus, absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Id.* (quoting *Eades v. Sterlinske,* 810 F.2d 723, 726 (7th Cir. 1987)).

Non-judicial officers or administrative officials may enjoy absolute immunity "if the following formula is satisfied: (a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damage lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Horwitz v. State Bd. of Med. Exam'rs,* 822 F.2d 1508, 1513 (10th Cir. 1987) (citing *Butz v. Economou,* 438 U.S. 478, 507 (1978)). However, federal executive officials exercising discretion are entitled to absolute immunity only in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Id.* The Supreme Court later expanded this doctrine and "held that absolute immunity from damages applies to federal hearing examiners and administrative law judges." *Id.* (citing *Cleavinger v. Saxner,* 474 U.S. 193, 202 (1985)).

The Tenth Circuit has applied the *Butz* rationale and extended quasi-judicial immunity to cases involving state administrative or executive officials serving in adjudicative, judicial, or prosecutorial capacities. *See Horwitz,* 822 F.2d at 1508 (extending quasi-judicial immunity to the Colorado Board of Medical Examiners); *Russ v. Uppah,* 972 F.2d 300, 303 (10th Cir. 1992)

(extending quasi-judicial immunity to parole boards); *Atiya v. Salt Lake County,* 988 F.2d 1013, 1017 (10th Cir. 1993) (extending quasi-judicial immunity to county administrative review boards); *Saavedra v. City of Albuquerque,* 73 F.3d 1525, 1529 (10th Cir. 1996) (extending quasi-judicial immunity to municipal hearing officers).

When a court determines whether an official's conduct is quasi-judicial in nature and whether absolute immunity attaches, it must engage in a "functional analysis" of the conduct. *Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1317 (10th Cir. 2002). Six factors, among others, have been identified by the Tenth Circuit, following and applying *Cleavinger,* "as characteristic of the judicial process and to be considered in determining absolute as contrasted from qualified immunity." *Id.* These factors are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedence; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.*

Defendants contend that they performed traditional adjudicatory functions in determining whether to grant Plaintiff's application for a mortgage broker license. (Docket #65 at 21.) This includes performing a background check, and collecting and reviewing other information which, they contend, is similar to the investigatory role of a prosecutor. (*Id.* at 21-22.) They also argue that Director Toll acted in an adjudicatory manner when she applied the law and made a determination to deny Plaintiff's license, and when she decided to file charges against Plaintiff. (*Id.* at 22.) While such contentions go to the general adjudicatory nature of Defendants' conduct, Defendants fail to address any of the above six factors for determining whether an official's conduct is quasi-judicial

14

in nature.

Defendants also contend that the ALJ hearings were adversarial in nature and that the Director's review of findings by the ALJ is similar to that of appellate review. (*Id.* at 23.) Consequently, the only two factors that Defendants have arguably touched upon are the adversarial nature of the process and the correctability of error on appeal. However, the Defendants do not attempt to apply the above mentioned contentions to these two factors, but rather simply list these and other contentions as evidence of the adjudicatory nature of the process overall.   Thus, Defendants have provided insufficient information to conduct the functional analysis required by *Moore*.

The Court recommends denying the Defendants' motion with regard to their quasi-judicial immunity defense.

B.     Qualified Immunity

The Defendants assert that they are entitled to qualified immunity on claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability. *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan*., 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 806-08 (1982);

*Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)).  Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's claim pursuant to 42 U.S.C. § 1983, the Court examines first whether Plaintiff has demonstrated on the alleged facts that the Defendants violated his constitutional right. The Court will then proceed to determine whether the right was clearly established at the time of the alleged conduct.

      1.     *Constitutional Violation*

          a.     Personal Participation

Defendants Waters, Martinez and Whitaker contend that they did not personally participate in the denial of Plaintiff's mortgage broker license, which he alleges violated his constitutional right to equal protection and, therefore, must be dismissed from this action as a matter of law. (Docket #65 at 18.) "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Ernst v. Gunter*, 9 F.3d 116 (10th Cir. 1993).

Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted).

Plaintiff alleges that Defendant Martinez fabricated evidence without which the denial of his license may not have occurred or continued. (Docket #45 at 6.) In particular, Plaintiff alleges that Martinez fabricated the interviews that formed the basis of February 11, 2009, denial of his license. (*Id*. at 4, 6.) The Court finds that this factual allegation, when accepted as true for purposes of this motion, establishes the necessary affirmative link to the ongoing denial of Plaintiff's license and is sufficient to show personal participation by Defendant Martinez.

Plaintiff also contends that Defendant Whitaker was at all relevant times the supervisor of Martinez and sanctioned the above mentioned actions by Martinez. (*Id*. at 7.) However, Plaintiff

17

fails to provide any specific factual allegations demonstrating the manner in which Defendant Whitaker sanctioned Martinez's conduct. Therefore, this contention is merely conclusory in nature and insufficient to show personal participation by Defendant Whitaker.[3] Finally, Plaintiff alleges that Defendants Waters and Whitaker worked to deny his license by not complying with the order of the ALJ. (*Id.*) Here again, however, Plaintiff fails to provide any specific factual allegations demonstrating the manner in which Defendants Waters and Whitaker worked to deny his license. Therefore, this contention is also merely conclusory in nature and insufficient to show personal participation by Defendants Waters and Whitaker.

Thus, accepting Plaintiff's allegations as true, the Court finds there are sufficient factual allegations to show personal participation by Defendant Martinez, but insufficient allegations showing personal participation by Defendants Waters and Whitaker. Consequently, the Court recommends that the District Court grant Defendant's motion to dismiss Plaintiff's claim against Defendants Waters and Whitaker. The Court will proceed to analyze Plaintiff's equal protection claim against Defendants Toll and Martinez.

b. Equal Protection

The Fourteenth Amendment requires that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) (quoting *Grace*

---

[3] Defendants note the recent decision by the Tenth Circuit in *Arocho v. Nafziger*, 367 F. App'x 942, 956 (2010), that, in light of the Supreme Court's decision in *Iqbal*, 129 S. Ct. at 1949, purpose rather than knowledge is required to impose supervisor liability. (Docket #72 at 11.) However, given that Plaintiff alleges Defendant Whitaker sanctioned Martinez' conduct, this argument is irrelevant.

*United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006)). "Equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).

Plaintiff does not claim to be proceeding as a protected class member or on behalf of an entire class; nevertheless, the Supreme Court has recognized "successful equal protection claims brought by a 'class of one.'" *Olech,* 528 U.S. at 564 (2000).  However, caution should be exercised by federal courts to avoid becoming "general-purpose second-guessers of the reasonableness of broad areas of state and local decision making: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system." *Jicarilla,* 440 F.3d at 1209 (citing *Jennings v. City of Stillwater,* 383 F.3d 1199, 1214 (10th Cir. 2004)).

 "In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive." *Jicarilla*, 440 F.3d at 1209 (citation omitted). Thus, an equal protection claim in such a case requires a showing that "(1) [the party] has been intentionally treated differently than other similarly situated individuals, *see* [*Olech*, 528 U.S. at 564], and (2) the difference in treatment was objectively irrational and abusive, *see* [*Jicarilla*, 440 F.3d at 1211]." *Rocky Mountain Rogues*, 375 F. App'x at 895-96.

      1.    Intentionally different treatment from similarly situated individuals

In class-of-one cases, it is particularly important that a plaintiff show that he was intentionally treated differently from other similarly situated persons.  *Jicarilla*, 440 F.3d at 1212. Such persons must be similar in all material respects.  *Id.*  This is an exacting burden that is not to

19

be dispensed with lightly. *See Jennings,* 383 F.3d at 1214 (holding that it is "imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class"). To demonstrate how narrow this focus is, the court in *Jennings* provided this example:

> [H]igh school students whose applications to a particular college were rejected could allege that they were being treated differently from the 'similarly situated' fellow students whose applications were accepted. In the example, one would want to know a good deal more about the merits of individual applicants before deciding who was similarly situated to whom.

*Id.* Thus, in this case, it is not sufficient to allege that other applications were granted, but rather the particulars relevant to the granting of these individuals' applications must be similar to those of the Plaintiff.

Plaintiff alleges that Mark Shifrin, Oai Luong, and others, described only as "applicants without convictions in the last five years," were granted licenses within 21 days of completion of their applications.  (Complaint, ¶ 35, docket #45 at 7.)  However, he has not informed this Court whether these individuals were granted a license before or after the change to the relevant statute in January 2008.  Additionally, given that the original stated reason for the denial of Plaintiff's license was Plaintiff's 1991 conviction for theft and burglary, it is material whether the alleged similarly situated individuals also had any criminal convictions more than five years old and whether they were for "a crime involving fraud, deceit, material misrepresentation, theft or the breach of a fiduciary duty." (*Id.* at 3.)  Plaintiff makes no allegations describing the circumstances underlying the individuals' applications in this regard.  Thus, Plaintiff has failed to allege that his treatment was different from individuals who are similar in all material aspects.

    2.  Objective rationality and abusiveness of the difference in treatment

In the Tenth Circuit, subjective ill-will, or "malice," is not relevant to a class-of-one claim. *Highland Dev., Inc. v. Duchesne Cnty.*, 505 F. Supp. 2d 1129, 1153 (D. Utah 2007). Rather, a plaintiff asserting a class-of-one claim must show that the action taken was both objectively irrational and abusive. *Jicarilla*, 440 F.3d at 1211. Thus, a claim will fail if there is any reasonably conceivable state of the facts that could provide a rational basis for the action taken. *Copelin-Brown v. N.M. State Pers. Office,* 399 F.3d 1248, 1255 (10th Cir. 2005). "[D]ecisions that are imprudent, ill-advised, or even incorrect may still be rational." *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 697 (S.D. Tex. 2009) (citing *Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006)). For the purposes of a 12(b)(6) motion, this means that a court "accepts all of the allegations in the complaint as true and then considers these 'facts' according to the deferential rational basis standard." *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007).

A decision on Plaintiff's license application was originally due by December 28, 2007. (Docket #45 at 3.) Under then existing law, Colo. Rev. Stat. § 12-61-905(1)(b) (2007), Plaintiff would not have been denied a license due to criminal activity because his criminal conviction for burglary and theft was more than five years old. (*Id*. at 2.) However, a new law, Colo. Rev. Stat. § 12-61-905.5(1)(n) (2008), was set to go into effect on January 1, 2008. (*Id*. at 3.) This law would give the Director the power to suspend or revoke Plaintiff's license four days after it may have been granted, because the time limitation for relevant criminal convictions was removed. (*Id*. at 3-4.) Thus, even had the Director issued Plaintiff a license on December 28, 2007, Defendants argue Plaintiff would not have retained this license. In January 2008, almost immediately after Plaintiff's

license would have been issued, Defendants claim the Director would have begun revocation proceedings. (Docket #65 at 13.) Thus, according to Defendants, the result of Plaintiff not having a license would have been the same regardless of which administrative process was used, and the form of denial in this case simply promoted administrative efficiency.

Plaintiff argues that these two outcomes are not the same because the procedures for revoking a license and denying a license are different. Specifically, Plaintiff states that he "does not argue that the Colorado State Mortgage Licensing law is not supported by a rational basis, but that Defendants in applying that law violated Plaintiffs [sic] rights to equal protection under the U.S. Constitution." (Docket #71 at 3.) However, the Plaintiff's argument is primarily directed at the procedure used to deny his license. He argues that if he "had a license on December 28, 2007 he would not have been required to wait nearly 3 years for a decision that a license should be issued to him anyway." (*Id.*) Such an argument invokes the due process clause, rather than the equal protection clause, of the Fourteenth Amendment. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotations and citations omitted). Whereas, "[e]qual protection is essentially a direction that all persons similarly situated be treated alike." *Grace United Methodist Church*, 451 F.3d at 659.

The Court has already addressed the Plaintiff's arguments concerning his due process claims in its August 11, 2010 Recommendation, and such claims were later dismissed by Judge Blackburn. (*See* Order, docket #44 at 2, approving Recommendation, docket #43 at 24-26.) In sum, the District Court dismissed the claims because, regardless of whether Plaintiff alleged a protected liberty interest in receiving a decision within twenty-one days, he had numerous opportunities to challenge

his license denial and, thus, was afforded due process. (*Id.*) After dismissal, Plaintiff was afforded an opportunity to amend his complaint to state an equal protection claim and the present motion to dismiss concerns only that claim. The Court will not consider Plaintiff's arguments here regarding any previously dismissed due process claims.

Consequently, even if this Court were to conclude that Plaintiff had established he was similarly situated to applicants granted licenses, the Court finds a rational basis for the denial of Plaintiff's license. Even though arguably ill-advised, the Director's decision to wait and issue a denial of Plaintiff's application for a mortgage broker license on January 2, 2008, was rationally related to the state's purpose at that time in enacting the new law to prevent individuals with convictions for theft and burglary from serving the public as mortgage brokers. Therefore, the Court recommends finding that Plaintiff has failed to state an equal protection claim in this case.

2.      *Clearly Established Right*

Given that the Court has concluded the Plaintiff has failed to state a constitutional violation, the Court need not proceed to determine whether the right was clearly established at the time of the alleged conduct. *See Christensen*, 554 F.3d at 1277. Nevertheless, in the interests of thoroughness and efficiency, the Court will proceed with the analysis in the event the District Court disagrees with this Court's recommendation concerning the first part of the qualified immunity inquiry. Here, even if the District Court were to find that Plaintiff has stated a constitutional violation, this Court concludes that he has failed to establish his equal protection right was clearly established at the time Defendants denied his application for a mortgage broker license.

Once a defense of qualified immunity is raised, the plaintiff must demonstrate that the law

on which he relies was clearly established at the time of the defendant's action. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (a plaintiff must prove the right was sufficiently clear that a reasonable official would have understood that his conduct violated the right). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1250 (D.N.M. 2010) (quoting *Zweibon v. Mitchell,* 720 F.2d 162, 172-73 (D.C. Cir. 1983), *cert. denied,* 469 U.S. 880 (1984)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001) (citing *Medina v. City & Cnty. of Denver*, 960 F2d 1493, 1498 (10th Cir. 1992), *overruled in part on other grounds*, *Williams v. City & Cnty. of Denver*, 99 F.3d 1009, 1014-15 (10th Cir. 1996)).

Here, the Plaintiff argues that Defendants "should have known that their conduct was unlawful." (Docket #71 at 5.)  The entirety of Plaintiff's argument is as follows:

> The second part of the analysis is easily satisfied in that these Defendants are seasoned real estate professionals, lawyers, and investigators; they know that when a law says a license should be denied only when there is a conviction "within 5 years" and a license is denied for a conviction 17 years ago and other applicants with convictions more than 5 years ago were not denied, their conduct is in violation of Constitutional rights. In addition, seasoned government agents should now [sic] that fabricating evidence is unlawful.

(*Id.*)  With this argument, Plaintiff has not met his burden to demonstrate that the law on which he relies was clearly established at the time of the defendant's action, *Anderson*, 483 U.S. at 640, nor has he identified a Supreme Court or Tenth Circuit decision on point, or the clearly established

weight of authority from other courts that have found the law to be as the Plaintiff maintains pursuant to *Currier,* 242 F.3d at 923. Plaintiff has pointed to no law confirming that he was protected by the equal protection clause in January 2008 from the denial of his license application for his past theft and burglary convictions, while others with past theft and burglary convictions were granted licenses. Thus, because there is no indication that Plaintiff's equal protection right concerning the denial of his application for a mortgage broker license, to the extent such right exists, was clearly established at the time the application was denied, the Court recommends that the District Court find Defendants enjoy qualified immunity from the Plaintiff's equal protection claim.

   3. *Summary*

   Defendants have asserted qualified immunity. Thus, the burden has shifted to Plaintiff to show that Defendants violated his constitutional rights and that these rights were clearly established at the time of violation. Plaintiff has failed to demonstrate on the alleged facts that Defendants Waters and Whitaker personally participated in the relevant actions. Additionally, while Plaintiff sufficiently has demonstrated on the alleged facts that Defendants Toll and Martinez personally participated in the relevant actions, he has failed to allege that these actions resulted in a constitutional violation. Plaintiff has not sufficiently established on the alleged facts he was similarly situated to applicants granted licenses, and the Court finds a rational basis for the denial of Plaintiff's license. Therefore, while there is typically no need to proceed with an evaluation whether Plaintiff's right was clearly established, the Court nevertheless concludes that Plaintiff has failed to allege on the facts that his equal protection right, to the extent it exists, was clearly established at the time his application was denied. Consequently, the Court recommends finding that all of the Defendants are entitled to qualified immunity in this action.

### III.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10.   Plaintiff's original equal protection claim was to be dismissed, unless amended, because he failed to identify any similarly situated individuals and to provide examples of other relevant applicants being treated differently.   (Docket # 44 at 2-3; Docket #43 at 23.)  Now, in Plaintiff's First Amended Complaint he has again failed to sufficiently identify how any other individuals, allegedly treated differently, were similarly situated to himself. Plaintiff's proposed Second Amended Complaint would not cure this.   Thus,  Plaintiff has been provided ample notice and opportunity to amend and cure the complaint, but has failed to do so.  As such, the Court recommends that Plaintiff be denied leave to amend a third time.

### CONCLUSION

In both the current First Amended Complaint and the proposed Second Amended Complaint, Plaintiff fails to state claims against Defendants in their individual capacities upon which relief may be granted. Accordingly, the Court RECOMMENDS that the District Court **grant** Defendants' Amended Motion to Dismiss First Amended Complaint [filed December 2, 2010; docket #65] and **deny** Plaintiffs' Motion for Leave to File Second Amended Complaint [filed April 11, 2011; docket #76].

Respectfully submitted at Denver, Colorado, this 1st day of July, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge